**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GLORIA M. HARRISON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08-352 (SLR) |
| | : | |
| v. | : | |
| | : | |
| RENATA J. HENRY, individually and in her | : | |
| official capacity as Director of the Division of | : | |
| Alcoholism, Drug Abuse and Mental Health | : | |
| of the Delaware Department Health and Social | : | |
| Services, SUSAN WATSON ROBINSON, | : | |
| individually and in her official capacity as | : | |
| Hospital Director of the Delaware Department | : | |
| of Health and Social Services, PHILIP | : | |
| THOMPSON, individually and in his capacity as | : | |
| Unit Director of the Delaware Department of | : | |
| Health and Social Services, DELAWARE | : | |
| DEPARTMENT OF HEALTH AND SOCIAL | : | |
| SERVICES, THE DELAWARE | : | |
| PSYCHIATRIC CENTER, and JOHN DOES | : | |
| 1-20, | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO**
**DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

Kathleen M. Jennings, Esq. (No. 913)
Joseph C. Schoell, Esq. (No. 3133)
WolfBlock LLP
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-5860

Date: August 8, 2008

## TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 1

II.   SUMMARY OF ARGUMENT ..................................................................................... 1

III.  STATEMENT OF FACTS ........................................................................................... 2

      A.   The Whistleblower Allegations .......................................................................... 2

      B.   The FMLA Allegations. ..................................................................................... 3

IV.   STANDARD OF REVIEW ......................................................................................... 4

V.    LEGAL ARGUMENT ................................................................................................. 5

      A.   The Complaint Fails to State a Claim Upon Which Relief Can Be Granted
           Because It Does Not State Plausible Claims for Relief. ...................................... 6

      B.   All Claims Must Be Dismissed Because the Defendants Are Immune from
           Suit in Federal Court. ........................................................................................ 7

           1.    Plaintiff's FMLA claim arises out of the "self-care" provision of the
                 Act. ......................................................................................................... 8

           2.    Congress did not abrogate the states' sovereign immunity through
                 enactment of the FMLA. ........................................................................ 8

           3.    Plaintiff cannot sue the individual defendants in federal court because
                 her suit amounts to nothing more than an attack against the State
                 Treasury. ............................................................................................... 12

      C.   Neither the FMLA Nor the Whistleblower Act Impose Liability on the
           Individual Defendants ....................................................................................... 13

           1.    The individual defendants are not liable under the FMLA. ................... 13

                 a.    The FMLA's structure and text shows that public officials are
                       not individually liable for alleged violations. ............................... 14

                 b.    The FMLA's purpose is not served by imposing individual
                       liability on public employees. ...................................................... 15

                 c.    Even if the Court were to conclude that public officials can be
                       individually liable, there are no plausible allegations that
                       either Ms. Henry or Mr. Thompson are an "employer." ............. 17

           2.    There is no individual liability under the Whistleblower Act. ................ 18

D.    Plaintiff Cannot Allege Any Facts to Support a Civil Conspiracy Claim. ........... 19

VI.    CONCLUSION................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*,
  372 F.3d 572 (3d Cir. 2004) ................................................................. 12

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ...................................................................... 5, 6

*Board of Trustees of the Univ. of Alabama v. Garrett*,
  531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) ....................... 8

*Brockman v. Wyoming Dep't of Family Serv.*,
  342 F.3d 1159 (10th Cir. 2003) ...................................................... 10, 11

*Chittister v. Department of Community and Economic Develop.*,
  226 F.3d 223 (3d Cir. 2000) ........................................................... 10, 11

*Deputy v. Williams*,
  Civ. No. 08-265-SLR, 2008 WL 2853877 (D. Del. July 21, 2008) (Robinson,
  U.S.D.J.) ............................................................................................ 7

*Eames v. Nationwide Mutual Ins. Co.*,
  412 F. Supp. 431 (D. Del. 2006) ......................................................... 19

*Eckert v. Schroeder, Joseph & Associates*,
  364 F. Supp. 2d 326 (W.D.N.Y. 2005) ................................................ 17

*Edelman v. Jordan*,
  415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ............... 7, 12, 13

*Falk v. Brennan*,
  414 U.S. 190 (1973) ........................................................................... 15

*Fanty v. Pennsylvania*,
  551 F.2d 2 (1977) .............................................................................. 12

*Garrett v. Univ. of Ala. Bd. of Trs.*, 193 F.3d 1214, 1219 (11th Cir. 1999) ............... 10

*Goldlawr, Inc. v. Shubert*,
  276 F.2d 614 (3d Cir. 1960) ............................................................... 19

*Hale v. Mann*,
  219 F.3d 61 (2d Cir. 2000) ................................................................ 10

*Johnson v. A.P. Products, Ltd.*,
  934 F. Supp. 625 (S.D.N.Y. 1996) ...................................................... 17

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
   20 F.3d 1250 (3d Cir. 1994) ............................................................. 4

*Keene v. Rinaldi,*
   127 F. Supp. 2d 770 (M.D.N.C. 2000) ................................... 14, 15, 16

*Kimel v. Florida Bd. of Regents,*
   528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) ..................... 7

*Laro v. New Hampshire,*
   259 F.3d 1 (2001) ...................................................................... 10, 11

*Lizzi v. Alexander,*
   255 F.3d 128 (4th Cir. 2001) ........................................................... 10

*Lum v. Bank of Am.,*
   361 F.3d 217 (3d Cir. 2004) .............................................................. 5

*Miles v. Bellfontaine Habilitation Center,*
   481 F.3d 1106 (8th Cir. 2007) ......................................................... 10

*Mitchell v. Wachovia Corp.,*
   No. 06-725 GMS, 2008 WL 1985236 (D. Del. May 5, 2008) .............. 19

*Mortenson v. First Federal Sav. & Loan Ass'n,*
   549 F.2d 884 (3d Cir. 1977) .............................................................. 4

*Nelson Radio & Supply v. Motorola, Inc.,*
   200 F.2d 911 (5th Cir. 1952) ........................................................... 19

*Nevada Dep't of Human Resources v. Hibbs,*
   538 U.S. 721, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003) ................... 9

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.,*
   998 F.2d 1192 (3d Cir. 1993) ............................................................ 3

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008) ......................................................... 5, 6

*Toeller v. Wisconsin Dep't of Corrections,*
   461 F.3d 871 (7th Cir. 2006) ....................................................... 8, 10

*Tomei v. Sharp,*
   902 A.2d 757 (Del. Super. 2006) ......................................... 13, 18, 19

*Touvell v. Ohio Dep't of Mental Retardation and Developmental Disabilities,*
   422 F.3d 392 (6th Cir. 2005) ...................................................... 10, 11

*Wascura v. Carver*,
    169 F.3d 683 (11th Cir. 1999) ........................................................................... 13

**STATUTES**

19 Del. C. § 1702 ................................................................................................... 18

19 Del. C. § 1703 .............................................................................................. 1, 18

29 Del. C. § 7903 ..................................................................................................... 1

29 U.S.C. § 203(x) ................................................................................................... 9

29 U.S.C. § 2601 ...................................................................................................... 1

29 U.S.C. § 2611(4) ............................................................................................ 9, 14

29 U.S.C. § 2612(a) ................................................................................................. 8

29 U.S.C. § 2617(a) ............................................................................................... 16

**RULES**

Fed. R. Civ. P. 8 ...................................................................................................... 5

**TEXTBOOKS**

The brief does not contain any citations to textbooks.

**OTHER AUTHORITIES**

29 C.F.R. § 825.104(a). ..................................................................................... 14, 15

29 C.F.R. § 825.108 ................................................................................................ 15

Eleventh Amendment ............................................................................................... 7

I.    **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

On June 12, 2008, plaintiff Gloria Harrison ("plaintiff") filed the instant complaint (the "Complaint") after she was discharged from the Delaware Psychiatric Center (the "Hospital"), a state psychiatric hospital that is operated by the Delaware Department of Health and Social Services (the "Department").  Plaintiff brings claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Delaware Whistleblower Act, 19 Del. C. § 1703 *et seq.*, and for civil conspiracy.  She named as defendants the Department, the Hospital, and three public employees:  Renata Henry, Director of the Division of Substance Abuse and Mental Health, [1] Susan Watson Robinson, formerly the Hospital Director, and Philip Thompson, a Unit Director at the Hospital (collectively, the "individual defendants").

On or about July 30, 2008, the Court approved a Modified Stipulation to Extend the Time and Answer the Complaint, giving all defendants until August 8, 2008 to answer or otherwise respond.  D.I. 9.

II.    **SUMMARY OF ARGUMENT**

The Complaint is fatally deficient and must be dismissed.

1.  This Court does not have subject matter jurisdiction over any of the claims because the Eleventh Amendment to the United States Constitution bars the action in its entirety.

2.  Further, the Complaint fails to state claims upon which relief can be granted.  It is impermissibly vague, and it alleges causes of action for which the defendants are not liable.  Therefore, all defendants respectfully request that this Court dismiss the Complaint with prejudice.

---

[1] The Complaint refers to the Division by its former name, the Division of Alcoholism, Substance Abuse, and Mental Health.  D.I. 1 at ¶ 3.  *See* 29 Del. C. § 7903 (establishing Division of Substance Abuse and Mental Health).

### III.    STATEMENT OF FACTS

This action arises from the discharge of plaintiff from her position as Director of Nursing at the Hospital.[2]  According to plaintiff, she was first hired at the Hospital in May 2005 and was promoted to the position of Director of Nursing in or about October 2005.  D.I. 1 at ¶ 2.  Plaintiff was terminated from this position on June 6, 2007.  *Id.*  The Complaint suggests two competing, and mutually exclusive, reasons for her discharge:  either plaintiff was fired in retaliation for certain "whistleblowing" actions that she took, or she was fired for taking leave pursuant to the FMLA.

### A.    The Whistleblower Allegations.

According to plaintiff, on or about November 2, 2006, Karen Stoppel, a Hospital nurse, witnessed an incident of patient restraint that Ms. Stoppel then reported to plaintiff.  *Id.* at ¶ ¶ 10-12.  Ms. Stoppel also completed an incident report of suspected patient abuse, known as a PM46. *Id.* at ¶ 12.  The report was investigated, and, ultimately, it was concluded that no abuse occurred.  *Id.* at ¶ 13.  Plaintiff alleges that two of the individual defendants, Ms. Robinson and Ms. Henry, dismissed the investigation in order to protect another defendant, Mr. Thompson, who was alleged to have participated in the abuse.  *Id.* at ¶ 10.

According to plaintiff, her only involvement in this alleged incident was to listen to Ms. Stoppel's complaint, ask two nurses to "assess the situation," and then ask Ms. Robinson about the "adequacy of the investigation."  *Id.* at ¶ ¶ 11, 12 & 16.  Plaintiff also alleges that Mr. Thompson, a Unit Director at the Hospital, held at least three meetings with other employees for the purpose of getting plaintiff fired.  *Id.* at ¶ 17.  She further alleges that Ms. Robinson attended

---

[2] The defendants dispute many of the facts alleged in the Complaint and certainly deny any wrongdoing or liability.  The factual disputes need not be resolved for purposes of this motion.

one of these meetings. *Id.* Although not anywhere stated in the Complaint, plaintiff appears to allege that the meetings were held as retaliation for her inquiries regarding the PM46 investigation. Plaintiff makes no allegation that Ms. Henry attended any of the meetings, nor does plaintiff allege that any of the defendants took any action as a result of these meetings. Plaintiff does allege, however vaguely, that she experienced "harassment and retaliation" in connection with her inquiries. *Id.* at ¶¶ 20 & 41.

**B.    The FMLA Allegations.**

In January 2007, plaintiff requested FMLA leave because she required reconstructive surgery for her foot. *Id.* at ¶ 22. Plaintiff's leave began on January 23, 2007, and her doctor initially certified that she should be able to return to work within six weeks (by March 5, 2007). *Id.*; *see also* State of Delaware FMLA Medical Certification dated Jan. 22, 2007, a true and correct copy of which is attached as Exhibit "A" to the Declaration of Kathleen Jennings, Esq. ("Jennings Dec.").[3] Approximately a month later, plaintiff's doctor extended the leave through March 20, 2007. D.I. 1 at ¶ 23. Plaintiff avers that, in early March, Ms. Robinson questioned plaintiff's eligibility to continue her leave and informed plaintiff that she must obtain approval either to continue her leave or to receive further short-term disability benefits, or, in the alternative, resign her position as Director of Nursing. *Id.* at ¶ 26. Further confusion occurred because plaintiff did not respond to Ms. Robinson's various letters and provided additional inconsistent medical certifications. *Id.* at ¶¶ 27-30 & Ex. L.

Plaintiff's erratic and inconsistent communications led to considerable confusion on the Hospital's part. At some point on or before March 14, 2007, plaintiff's doctor certified that

---

[3] Courts, without transforming a motion to dismiss into a motion for summary judgment, may consider documents attached to a motion to dismiss if the plaintiff's claims are based on the documents. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

plaintiff would not be able to return to work until April 13, 2007. *See* State of Delaware FMLA Medical Certification, undated, a true and correct copy of which is attached as Exhibit "B" to Jennings Dec. On April 2, 2007, the doctor certified that plaintiff could not return to work until April 23, 2007; this certification was also signed by Ms. Harrison. D.I. 1 at ¶ 29 & Ex. L. Yet the next day, plaintiff, unannounced and without a fitness-for-duty certification, appeared for work. *Id.* at ¶ 30 & Ex. M. Plaintiff was sent home, and then belatedly supplied a fitness-for-duty certification that in no way explained how she could appear for work on April 3d when, just the day before, both she and her doctor certified that she would not be able to return for at least 21 more days. *See* Fax Cover Sheet from Delaware Foot and Ankle Group, a true and correct copy of which is attached as Exhibit "C" to Jennings Dec.

After plaintiff returned to work, the Hospital requested an explanation of the various inconsistencies in the certifications submitted to the Hospital. D.I. 1 at ¶ 31 & Ex. N. Plaintiff's doctor supplied yet another letter with an entirely new reason for why plaintiff could not return to work, a reason that was not in any way connected to the essential functions of plaintiff's position. *Id.* at ¶ 32 & Ex. O & P. Plaintiff alleges that she was terminated because she failed to provide adequate medical documentation to explain her inability to work from March 13, 2007 until April 3, 2007. *Id.* at ¶ 33.

## IV.    STANDARD OF REVIEW

In deciding motions to dismiss, courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994) (applying standard to motion to dismiss pursuant to Rule 12(b)(6)); *see also Mortenson v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (applying standard to Rule 12(b)(1) motions that attack complaint on its face). In addition to the complaint's allegations, the Court may consider facts

contained in "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222, n. 3 (3d Cir. 2004) ("The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." (citation omitted)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (further explaining that merely "conceivable" claim is not sufficient).

The Court of Appeals for the Third Circuit recently summarized this standard by explaining:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but, instead, "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Thus, Federal Rule of Civil Procedure 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" means plaintiff must actually show that she is entitled to relief and not merely make a blanket assertion to the effect.

## V.    LEGAL ARGUMENT

Plaintiff's complaint is fatally deficient and must be dismissed. First, plaintiff violates Rule 8 by simply reciting the elements of the various causes of action asserted without

explaining which factual allegations support the alleged claims.  Second, the Department, the

Hospital, and the individual defendants are immune from suit in federal court, and all causes of

action against them must be dismissed.  Third, the individual defendants are not liable under

either the FMLA or the Delaware Whistleblower Act (the "Whistleblower Act"), and those

claims must be dismissed.  Fourth, plaintiff's civil conspiracy claim must be dismissed because

she has alleged no facts to support it.

> **A.     The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Because It Does Not State Plausible Claims for Relief.**

The Complaint's vague recital of the alleged harms to plaintiff are fatal to it.  *Twombly*

and *Phillips* both require plaintiff to provide "more than labels and conclusions" to prove her

entitlement to relief.  *Twombly*, 127 S. Ct. at 1964-65; *Phillips*, 515 F.3d at 234.  Yet labels and

conclusions are all that plaintiff provides.  In connection with her FMLA leave claim, plaintiff

claims that the defendants "retaliated" against her, "wrongfully disciplined her," and "wrongfully

interfered with, restrained, and denied" her attempt to exercise her rights under the FMLA.  D.I.

1 at ¶¶ 36-37.  In the preceding 34 paragraphs of the Complaint, plaintiff recites numerous

communications from Ms. Robinson and the Hospital, as well as certain actions taken by the

Hospital during and after plaintiff's leave.  There is no way for the defendants to determine

which of those actions plaintiff believes constituted retaliation, wrongful discipline, or wrongful

interference with her FMLA rights.

Plaintiff's Whistleblower Act and civil conspiracy claims are similarly defective.

According to plaintiff, she was "retaliated against," "harassed," and "subjected to discriminatory

treatment" because of her tangential involvement in another nurse's report of abuse.  D.I. 1 at

¶ 41.  The alleged acts that form the basis of these claims are not identified.  It is also impossible

to discern the basis of plaintiff's civil conspiracy claim.  All of the defendants are alleged to have

agreed to commit unlawful acts in order to get plaintiff discharged from her position. *Id.* at

¶¶ 45-46. What was the basis of this conspiracy? Plaintiff's alleged whistleblowing activities?

Her use of FMLA leave? There is no way to tell. It is not enough to use the "correct 'buzz

words'" in a complaint. *Deputy v. Williams*, Civ. No. 08-265-SLR, 2008 WL 2853877, *3 (D.

Del. July 21, 2008) (Robinson, U.S.D.J.). Plaintiff must come forward with more than labels and

conclusions in order to state a plausible claim for relief. *Id.* at *1 & *3.

**B.     All Claims Must Be Dismissed Because the Defendants Are Immune from Suit in Federal Court.**

The Eleventh Amendment to the United States Constitution bars federal courts from

hearing suits against states and their officials.

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or in equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court has long recognized that this

Amendment applies to suits by citizens against their own states. *See, e.g., Kimel v. Florida Bd.*

*of Regents*, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000).

Because the Department and the Hospital are arms of the State, they are immune from

suit in the federal courts. As plaintiff notes in the Complaint, the Department is a cabinet

department of the State of Delaware. D.I. 1 at ¶ 6. The Hospital is one of three operating units

of the Department's Division of Substance Abuse and Mental Health. *See* Division of Substance

Abuse and Mental Health's Web Page, a copy of which is attached as Exhibit "D" to the

Jennings Dec. Similarly, public officials are not subject to suit in the federal courts when a

plaintiff seeks damages for alleged breaches of past legal duties. *Edelman v. Jordan*, 415 U.S.

651, 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Thus, the Court lacks subject-matter

jurisdiction over all of plaintiff's claims.

1.    Plaintiff's FMLA claim arises out of the "self-care" provision of the Act.

The FMLA entitles eligible employees to take up to 12 weeks of leave during any unpaid

period for one or more of the following:

(A)  Because of the birth of a son or daughter of the employee and in order to care
for such son or daughter.

(B)  Because of the placement of a son or daughter with the employee for
adoption or foster care.

(C)  In order to care for the spouse, or a son, daughter, or parent, of the employee,
if such spouse, son, daughter, or parent has a serious health condition.

(D)  Because of a serious health condition that makes the employee unable to
perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).  Subsection (a)(4)(D) is typically described as the "self-care" provision.

*See, e.g., Toeller v. Wisconsin Dep't of Corrections*, 461 F.3d 871, 877 (7th Cir. 2006).

Plaintiff's FMLA leave falls under this subsection because she took leave to recover from

reconstructive surgery to one of her feet.  D.I. 1 at ¶ 22.

2.    Congress did not abrogate the states' sovereign immunity through
enactment of the FMLA.

Although Congress can, in appropriate circumstances, abrogate a state's Eleventh

Amendment immunity, it has not done so in connection with the self-care provision of the

FMLA.  Congress may abrogate a state's sovereign immunity when it "unequivocally intends to

do so and 'act[s] pursuant to a valid grant of constitutional authority.'"  *Board of Trustees of the*

*Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001)

(*quoting Kimel*, 528 U.S. at 73, 120 S. Ct. 631, 145 L. Ed. 2d 522).  The defendants concede that

Congress unequivocally intended to abrogate the State's immunity, but it is equally clear that Congress did not act pursuant to a constitutionally valid grant of authority.[4]

In order to abrogate the State's immunity, Congress had to act pursuant to its power under section 5 of the Fourteenth Amendment. *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726-27, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003) . In enacting the FMLA, Congress relied on its Article I commerce power and its section 5 power. *Id.* at 726, 123 S. Ct. 1972, 155 L. Ed. 2d 953. But only its section 5 power permits Congress to abrogate the state's sovereign immunity. *Id.* at 726-27, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (explaining that Congress may not abrogate sovereign immunity pursuant to Article I commerce power). Pursuant to section 5 of the Fourteenth Amendment, Congress may proscribe conduct already held unconstitutional by the courts or prohibit otherwise facially constitutional conduct in order to prevent and deter unconstitutional conduct. *Id.* at 727-28, 123 S. Ct. 1972, 155 L. Ed. 2d 953.

To be valid, section 5 legislation "must exhibit 'congruence and proportionality between the injury to be prevented and the means adopted to that end.'" *Id.*, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (*quoting City of Boerne v. Flores*, 521 U.S. 507, 520, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997)). The FMLA seeks to prevent gender-based discrimination in the workplace, and Congress found that men were less likely than women to be granted leave to take care of a family member. *Id.* at 728 & 730-34, 123 S. Ct. 1972, 155 L. Ed. 2d 953. Thus, a uniform requirement that any person—regardless of gender—is entitled to 12 weeks of leave in order to care for a

---

[4] The FMLA defines the term "employer" to include "any 'public agency'" as defined by section 203(x) of the Fair Labor Standards Act. 29 U.S.C. § 2611(4)(A)(iii). The Fair Labor Standards Act defines "public agencies" to include "the government of a State or political subdivision thereof" and "any agency of . . . a State . . . ." 29 U.S.C. § 203(x). There is no question that Congress intended to abrogate the State's Eleventh Amendment immunity by using this language. *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003) ("The clarity of Congress' intent here is not fairly debatable.").

family member was a "congruent and proportional" remedy for the injury. *Id.* at 737, 123 S. Ct. 1972, 155 L. Ed. 2d 953.

But plaintiff is suing the State on the basis of an alleged violation of the *self-care* provision of the FMLA. Although Congress can enact prophylactic legislation to prevent an injury recognized by the courts, it is without power to substantively redefine the Fourteenth Amendment right at issue. *Id.* at 728, 123 S. Ct. 1972, 155 L. Ed. 2d 953. All circuit courts to consider the question agree that there is no nexus between gender-neutral medical leave for one's own condition and the prevention of gender-based discrimination. *Brockman v. Wyoming Dep't of Family Serv.*, 342 F.3d 1159, 1165 (10th Cir. 2003); *accord Miles v. Bellfontaine Habilitation Center*, 481 F.3d 1106, 1107 (8th Cir. 2007); *Toeller v. Wisconsin Dep't of Corrections*, 461 F.3d 871, 879 (7th Cir. 2006); *Touvell v. Ohio Dep't of Mental Retardation and Developmental Disabilities*, 422 F.3d 392, 405 (6th Cir. 2005); *Laro v. New Hampshire*, 259 F.3d 1, 16 (2001); *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001); *Hale v. Mann*, 219 F.3d 61, 69 (2d Cir. 2000); *Chittister v. Department of Community and Economic Develop.*, 226 F.3d 223, 228-29 (3d Cir. 2000); *Garrett v. Univ. of Ala. Bd. of Trs.*, 193 F.3d 1214, 1219 (11th Cir. 1999), *rev'd on other grounds*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001).

As the U.S. Court of Appeals for the Third Circuit explained in *Chittister*, there were no Congressional findings that employers refused sick leave in order to disadvantage employees of a particular gender.[5] 226 F.3d at 229. Chittister, an employee of a Pennsylvania agency, requested and received sick leave in order to care for himself. Approximately 10 weeks into his leave, he was fired. *Id.* at 226-27. Chittister sued the Commonwealth in federal court, and the

---

[5] *Chittister* was decided before *Hibbs*, and it held that no provision of the FMLA validly abrogated the states' immunity to suit in federal court. 226 F.3d at 229. Although *Hibbs* clearly establishes that states can be sued in federal court for violations of the family-leave provision, it does not call into question *Chittister*'s holding as applied to the self-care provision.

Third Circuit remarked that "[n]otably absent" from Congress' findings on the FMLA was any evidence "concerning the existence, much less the prevalence, in public employment of personal sick leave practices that amounted to intentional gender discrimination in violation of the Equal Protection Clause." *Id.* at 228-29. Therefore, permitting the states to be sued in federal court was not a "congruent and proportional" remedy for the alleged injury. *Id.* at 229.

Other Circuit Courts of Appeals have echoed *Chittister*'s reasoning. As the Sixth Circuit explained, the FMLA's legislative history suggests only two motivations for requiring employers to provide 12 weeks of leave for employees who need to care for themselves. *Touvell*, 422 F.3d at 401. First, Congress wished to alleviate the economic burdens that fall on employees and their families from illness-related job loss. *Id.* Indeed, the Senate and House Reports on the FMLA emphasize that the self-care provision's *fundamental* purpose is to prevent economic harm to sick workers and their families. *Id.* (*quoting* S. Rep. No. 103-3 at 11 & H.R. Rep. 101-28(I) at 23). Second, Congress sought to prevent discrimination against employees with serious health conditions. *Id.* (*citing* S. Rep. No. 103-3 at 12 & H.R. Rep. 101-28(I) at 23). Although each of these goals is laudable, neither constitutes a right protected by the Fourteenth Amendment. *Id.*

Congress can only abrogate Eleventh Amendment immunity if it can show a pattern of discrimination by the states in connection with sick leave policies. *Id.* at 402; *Laro*, 249 F.3d at 12 (Congress must find that states themselves unlawfully discriminated on basis of gender). The Circuit Courts uniformly agree that Congress never made any such finding. *See, e.g., Brockman*, 342 F.3d at 1164. Therefore, Congress could not validly subject the State of Delaware to suit in this Court for an alleged violation of the self-care provision of the FMLA. Without any basis for original jurisdiction over the State, this Court cannot exercise supplemental jurisdiction over

plaintiff's state law claims.  Thus, all claims against the Department and the Hospital must be dismissed.

        3.      Plaintiff cannot sue the individual defendants in federal court because her suit amounts to nothing more than an attack against the State Treasury.

Here, plaintiff named the individual defendants—all public employees—in both their official and individual capacities.  Suits against public employees in their official capacities are suits against the government entity itself.  *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*,  372 F.3d 572, 580 (3d Cir. 2004).  Therefore, any judgment against the individual defendants becomes a judgment against the State.  Thus, plaintiff's claims against the individual defendants in their official capacities must be dismissed because the Eleventh Amendment bars the Court from hearing them.

Public officials sued in their individual capacity are not liable to suit in federal court if the funds necessary to satisfy any award must inevitably come from the state's coffers. *Edelman*, 415 U.S. at 664, 94 S. Ct. 1347, 39 L. Ed. 2d 662.  A public official may be held liable only where the plaintiff seeks prospective relief, and any fiscal consequences to the state are "the necessary result of compliance with decrees which by their terms were prospective in nature." *Id.* at 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662.  Thus, prospective relief can only be awarded for *ongoing* violations of federal law.  *Id.*  (barring suit because it sought damages "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials"); *see also Fanty v. Pennsylvania*, 551 F.2d 2, 4 (1977).

All of plaintiff's claims seek redress for an alleged past breach of a legal duty.  Plaintiff's demands for relief include requests for back pay, other compensatory damages (such as benefits), and interest.  These damages only remedy a past wrong.  The only prospective relief sought by plaintiff is for reinstatement or an award of front pay.  None of the defendants in their individual

capacity can authorize plaintiff's reinstatement; only the Department can re-hire her. And an award of front pay is not a "necessary consequence of compliance in the future with a substantive federal-question determination," *Edelman*, *supra,* but rather redress for an alleged past wrong that will be paid from the State's Treasury. Therefore, all of the claims are nothing more than an indirect attack on the State Treasury, and they must be dismissed.

**C.    Neither the FMLA Nor the Whistleblower Act Impose Liability on the Individual Defendants.**

Even if the Court were to assume that it has jurisdiction over the individual defendants, plaintiff still fails to state a claim for relief because neither the FMLA nor the Whistleblower Act impose liability on public officials. *See Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) (holding that public officials are not individually liable under FMLA); *Tomei v. Sharp*, 902 A.2d 757, 767 (Del. Super. 2006), *aff'd* 918 A.2d 1171 (Del. 2007) (holding that public officials are not individually liable under Whistleblower Act).

1.    The individual defendants are not liable under the FMLA.

Although there is language in the FMLA that appears to impose liability on public employees, a close examination of the statute's structure and purposes makes clear that no such liability actually attaches. The FMLA states:

(A) In general

The term "employer"—

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes—

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II)  any successor in interest of an employer;

(iii)  includes any "public agency," as defined in section 203(x) of this title; and

(iv)  includes the General Accounting Office and the Library of Congress.

29 U.S.C. § 2611(4).

>    a.    *The FMLA's structure and text shows that public officials are not individually liable for alleged violations.*

An individual can be an employer only under subsections (A)(i) or (A)(ii)(I).  *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 775 (M.D.N.C. 2000).  There are no allegations—and, indeed, plaintiff can make none—that any of the individual defendants are employers under (A)(i).  Thus, her claims must rest on subsection (A)(ii)(I).

The FMLA defines private and public employers differently.  Private employers must be engaged in commerce and employ 50 or more people, but public agencies are employers for purposes of the FMLA regardless of the number of people they employ.  *See id.* at 775; 29 C.F.R. § 825.104(a).  Subsection (A)(ii)(I) clearly applies to private employers but not public employers.  It immediately follows upon the definition of a private employer and *precedes* the definition of a public employer.  If Congress had intended public officials to be held individually liable, it would have placed subsection (A)(ii)(I) at the end of subsection (A), immediately after the inclusion of the General Accounting Office and Library of Congress in the employer definition.  *Keene*, 127 F. Supp. 2d at 776.  Further, the individual liability language is contained in a subsection that also explicitly includes successors in interest as employers.  As *Keene* points out, public employers rarely, if ever, have successors in interest in the labor context.  *Id.*  Linking these two clauses together—individual liability and successor liability—demonstrates that only individuals at private employers can be held liable.  *Id.*

The Department of Labor regulations provide further support for this conclusion.  In the regulation discussing the definition of employer, only corporate officers are singled out as an example of someone who is individually liable.  29 C.F.R. § 825.104(d) ("[I]ndividuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of the FMLA.").  "It is significant that the regulation specifically mentions corporate officers, but does not mention mere supervisors.  In fact, it does not mention any individuals working for public agencies."  *Keene*, 127 F. Supp. 2d at 776.  Further, section 825.108, which defines "public agency" in greater detail, discusses only the agency's liability and makes no mention of individual liability.  29 C.F.R. § 825.108.  "This lack of regulatory discussion of liability for supervisors confirms the . . . conclusion that the FMLA does not impose individual liability upon such persons."  *Keene*, 127 F. Supp. 2d at 776.

> b.      *The FMLA's purpose is not served by imposing individual liability on public employees.*

The FMLA's goal is in no way advanced if the Court imposes liability on these individual defendants.  Subsection (A)(ii) exists to prevent actual employers from circumventing the law by claiming that they are not the employer.  *Id.* at 777.  *Keene* cited the U.S. Supreme Court's decision in *Falk v. Brennan*, 414 U.S. 190 (1973), as evidence of the ways in which employers try to escape liability.  In *Falk*, maintenance workers for an apartment complex sued for alleged violations of the Fair Labor Standards Act.  The apartment complex had hired a real estate management company (the "management company") to provide all management services, including supervision and payment of the maintenance workers.  By contract, however, the workers were employees of the apartment complex.  Both the complex and the management company attempted to disclaim liability, but the Supreme Court held that they were both employers for purposes of the claim.  In the FMLA context, subsection (A)(ii)(I) would

explicitly prevent the management company from disclaiming liability because it had directly

acted on behalf of the contractual employer, the apartment complex.

As *Keene* explains, the individual liability provision is best understood as a means to

prevent employers "'from shielding themselves from responsibility for the acts of their agents.'"

127 F. Supp. 2d at 777 (quotation omitted).  For example, the FMLA permits plaintiffs to collect

liquidated damages for willful violations of the Act.  29 U.S.C. § 2617(a)(1)(A)(ii).  Typically,

employers are only liable for acts by their employees or agents that are within the course and

scope of employment under the common-law doctrine of respondeat superior.  A willful

violation of a federal law could never be considered to be within the scope of employment.  By

specifically including persons who act directly or indirectly in the employer's interest, the FMLA

prevents the actual employer from claiming that it is not liable for its agents' acts when a

plaintiff alleges a willful violation of the statute.

Additionally, permitting suits against individual public supervisors opens the door to

potentially abusive suits.

> [A]n interpretation of the FMLA which would permit a mere supervising
> employee to be deemed an employer creates an, if not absurd, then an ironic
> situation where every other person in an organization can be an employer of
> others except the person on the very bottom.  By intermingling with and
> confusing the line between employer and employee, such an interpretation mainly
> serves to laden FMLA cases with personal disputes and antagonisms and matters
> of office politics.  This result is both unnecessary and contra indicative of the
> purpose of the FMLA.

*Keene*, 127 F. Supp. 2d at 776-77.  In fact, permitting such suits would allow plaintiffs to sue

*only* the individual public employees and would never require them to name the actual employer,

which could lead to FMLA claims based on nothing more than personal animosity.  *See id.* at

777.  Because permitting claims against the individual defendants offends the text, structure, and

purpose of the FMLA, plaintiff's claims against Ms. Henry, Ms. Robinson, and Mr. Thompson should be dismissed.

> c.    *Even if the Court were to conclude that public officials can be individually liable, there are no plausible allegations that either Ms. Henry or Mr. Thompson are an "employer."*

Finally, plaintiff makes no allegations that could transform Ms. Henry or Mr. Thompson into an "employer" for purposes of the FMLA. Ms. Henry appears only twice in the Complaint, first when she is identified and then later when plaintiff avers, "on information and belief," that Ms. Henry frustrated the PM46 investigation in order to protect Mr. Thompson. D.I. 1 at ¶¶ 3 & 16. There are no allegations at all that Ms. Henry was involved in any decision relating to plaintiff's FMLA leave. *See, generally, id.* at ¶¶ 22-33. Further, Mr. Thompson is only mentioned in connection with alleged actions that took place before plaintiff went on leave. *Id.* at ¶¶ 10, 15 & 17.

Additionally, there are no allegations that either defendant had the power to control plaintiff's employment or make any decision about her termination. *See Eckert v. Schroeder, Joseph & Associates*, 364 F. Supp. 2d 326, 327-28 (W.D.N.Y. 2005) (explaining that liability attaches only against individuals that "'possessed the power to control the worker in question[].'" (quotation omitted)); *Johnson v. A.P. Products, Ltd.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996) ("[T]he FMLA 'extends to all those who controlled in whole or in part [plaintiff's] ability to take a leave of absence and return to her position.'" (quotation omitted)). Although Ms. Henry was the director of the Division of Substance Abuse and Mental Health, there are no allegations that she controlled plaintiff's ability to take leave or return to her job. Further, there are no allegations—nor can there be—that Mr. Thompson, a Hospital Unit Director, had any authority or control over plaintiff's employment. If anything, plaintiff's allegations that he held meetings

in an attempt to get her fired indicate that he could not take such action directly but, instead, could only hope to influence others with the authority to do so.

        2.    <u>There is no individual liability under the Whistleblower Act.</u>

Similarly, the individual defendants are not liable for alleged violations of the Delaware Whistleblower Act, 19 Del. C. § 1703 *et seq.* The Act prohibits employers from discharging, threatening, or otherwise discriminating against employees because an employee:

> (1) . . . reports or is about to report [to] a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false;
>
> (2) . . . participates or is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body or a court action, in connection with a violation . . . ;
>
> (3) . . . refuses to commit or assist in the commission of a violation, . . .;
>
> (4) . . . reports verbally or in writing to the employer or the employer's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false. Provided, however that the report is verbally made, the employee must establish by clear and convincing evidence that such report was made.

19 Del. C. § 1703. A violation includes an act or omission by the employer that is "materially inconsistent with, and a serious deviation from," legal standards promulgated to protect employees or others from health, safety, or environmental hazards while on the employer's property. *Id.* at § 1702(6).

In 2006, it was clearly determined that individual state employees are not liable for violations of the Act. *Tomei v. Sharp*, 902 A.2d 757 (Del. Super. 2006), *aff'd* 918 A.2d 1171 (Del. 2007). The individual defendants here are not liable because they were not plaintiff's employer, the State is liable for any financial obligations that could result from a successful

action, and the Act's definition of employer does not include individuals. *Id.* at 767. Therefore, the Whistleblower Act claims against the individual defendants must be dismissed.

    **D.**    **Plaintiff Cannot Allege Any Facts to Support a Civil Conspiracy Claim.**

To prove her civil conspiracy claim, plaintiff must show "(1) a combination of two or more persons, (2) an unlawful act done to further the conspiracy, and (3) damages." *Eames v. Nationwide Mutual Ins. Co.*, 412 F. Supp. 431, 438 (D. Del. 2006). A civil conspiracy claim is not an independent cause of action and must be predicated on an underlying wrong. *Id.* Thus, if there is no underlying wrong—such as when a plaintiff alleges violations of Title VII and a civil conspiracy claim, and fails to state a claim under Title VII—the civil conspiracy claim must be dismissed. *Mitchell v. Wachovia Corp.*, No. 06-725 GMS, 2008 WL 1985236 (D. Del. May 5, 2008).

Here, plaintiff cannot plausibly aver that two or more persons combined to commit an unlawful act. Taking the second element first, the only possible unlawful act is the alleged violation of the FMLA. As discussed *supra*, only employers, and not the individual defendants, can violate the Whistleblower Act. As to the alleged FMLA violation, the only defendant who could conceivably be held liable is Ms. Robinson because there are no allegations that either Ms. Henry or Mr. Thompson were in any way involved—let alone controlled—any decisions related to plaintiff's leave.

Ms. Robinson cannot conspire with herself, nor can she conspire with either the Department or the Hospital. "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Nelson Radio & Supply v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952); *see also Goldlawr, Inc. v. Shubert*, 276 F.2d 614, 617 (3d Cir. 1960) (adopting *Nelson*'s

"fundamental rule" as holding). Therefore, because plaintiff cannot plausibly aver that two or more of the defendants combined together to commit an unlawful act, this claim must be dismissed.

## VI.    CONCLUSION

Plaintiff's Complaint should be dismissed in its entirety because the Court lacks subject-matter jurisdiction to hear any of the claims against any of the defendants, the Complaint violates Rule 8, and plaintiff's claims against the individual defendants cannot be maintained because there is no individual liability for public employees under either the FMLA or Whistleblower Act. For these reasons, defendants respectfully request that the Court dismiss the Complaint with prejudice.

WOLFBLOCK LLP

Date:  August 8, 2008                             /s/ Kathleen Jennings
                                                  Kathleen M. Jennings, Esq. (No. 913)
                                                  Joseph C. Schoell, Esq. (No. 3133)
                                                  1100 N. Market Street, Suite 1001
                                                  Wilmington, DE 19801
                                                  (302) 777-5860
                                                  Attorneys for Defendants