**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GLORIA M. HARRISON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 08-352-SLR/MPT |
| | : | |
| RENATA J. HENRY, individually and in her | : | |
| official capacity as Director of the Division | : | |
| of Alcoholism, Drug Abuse and Mental | : | |
| Health of the Delaware Department Health | : | |
| and Social Services, SUSAN WATSON | : | |
| ROBINSON, individually and in her official | : | |
| capacity as Hospital Director of the | : | |
| Delaware Department of Health and Social | : | |
| Services, PHILIP THOMPSON, individually | : | |
| and in his capacity as Unit Director of the | : | |
| Delaware Department of Health and Social | : | |
| Services, DELAWARE DEPARTMENT OF | : | |
| HEALTH AND SOCIAL SERVICES, THE | : | |
| DELAWARE PSYCHIATRIC CENTER, and | : | |
| JOHN DOES 1-20, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff, Gloria M. Harrison, ("Harrison") filed suit on June 12, 2008 against

Renata J. Henry ("Henry"), Susan Watson Robinson ("Robinson"), Philip Thompson

("Thompson"), in their individual and official capacities, the Delaware Department of

Health & Social Services ("DHSS") and the Delaware Psychiatric Center ("DPC").

Harrison alleges three counts: retaliation for exercise of her rights under the Family

Medical Leave Act ("FMLA"), violation of 19 Del. C. § 1701, the Whistleblowers'

1

Protection Act, and civil conspiracy.  On August 8, 2008, defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject-matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief can be granted.  Harrison filed her answering brief on August 29, 2008.  Defendants filed their reply on September 9, 2008.

**Facts**

### Whistle Blower Retaliation

On or about November 2, 2006, Karen Stoppel, a nurse employed by the Delaware Department of Health and Social Services, witnessed five male employees, including Thompson, forcefully restrain a female patient.  Stoppel relayed this information to Harrison, then Director of Nursing at DPC, and filed a complaint with her supervisor.  An investigation within DHSS occurred and a finding of no abuse resulted. Harrison expressed concern to Robinson, then Hospital Director of DHSS, about the adequacy of the investigation.  Thereafter, Harrison received an e-mail from Nurse Manager Avery Shockley which claimed that a meeting was held about how to get Harrison fired from DPC.  Harrison alleges that Thompson held at least three meetings (December 6, 13, and 14, 2006) with other employees for the purpose of getting her fired.

### Family Medical Leave Act

On or about January 23, 2007, Harrison underwent reconstructive surgery on her foot.  She had the full twelve week allotment of FMLA leave available for recovery and received approval for that leave based on her doctor's original prediction that she could return to work by March 5, 2007.  On February 20, 2007, Harrison's doctor determined

that March 20, 2007 would be the earliest she could return.  He notified DPC Human Resources of his diagnosis of continued disability on March 2, 2007.  Robinson advised Harrison that another approval was needed to extend her FMLA leave:  otherwise, Harrison would have to resign.  A pre-decision meeting was held on April 12, 2007 to address Harrison's leave of absence.[1]  Henry, Director of the Division of Alcoholism, Drug Abuse and Mental Health of DHSS, was present as that meeting.

The next day, Robinson sent Harrison a letter requiring her return to work by March 19, 2007.  On March 14, 2007, the DPC human resources department received a fax of an FMLA medical certification form for an extension of leave time until April 13, 2007.  On April 2, 2007, Harrison's doctor executed another FMLA medical certification to extend Harrison's leave until April 23, 2007.

On April 3, 2007, Harrison appeared for work at DPC without notice or a fitness-for-duty certification.  Robinson advised Harrison that she could not return to work until she had been medically cleared and that she needed to explain the discrepancy between her doctor's April 23, 2007 return date and her current presence at work twenty days early.  Harrison eventually obtained medical clearance and returned to work shortly thereafter.

On May 4, 2007, Robinson sent Harrison a letter advising that her FMLA leave was valid only through March 12, 2007 and that documentation from her doctor was required to account for her absence from March 13 to April 3, 2007 by no later than May 22, 2007.  On that date, Harrison's doctor faxed a response which explained the

---

[1] The complaint alleges that this meeting occurred on March 12:  exhibit N to the complaint indicates it occurred on April 12.

discrepancy as the difference between predicted recovery time and actual recovery time.  Harrison's doctor concluded that she could return to work by April 3, 2007.

On May 14, 2007, Harrison filed a grievance against Robinson pursuant to Merit Rule Section 2.0 Non-Discrimination.  Robinson appointed herself as the Step One Hearing Officer for that grievance hearing and concluded that no discrimination occurred.

On June 6, 2007, Harrison received a letter from Vincent P. Meconi, Secretary of Health and Social Services, who concluded that she had failed to provide adequate medical documentation to explain her absence from March 13, 2007 until April 3, 2007 and terminated her employment as of that date.  She was fired two days before the Step Two hearing which was scheduled for June 8, 2007.

Harrison alleges her dismissal is in violation of her rights under the FMLA, the result of retaliation for her whistle-blowing actions, and part of a civil conspiracy by the named defendants to terminate her employment.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.[2]  Though the standard is similar to that of a 12(b)(6), the Third Circuit has "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims" because "the standard for surviving a rule 12(b)(1) motion is lower than that for a 12(b)(6) motion."[3]  Similar to Rule 12(b)(6), all

---

[2] Fed. R. Civ. P. 12(b)(1).
[3] *Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs*, No. Civ. A. 03-5367, 2004 WL 1447834, *1 (E.D. Pa. June 28, 2004).

reasonable inferences should be given to the non-moving party.[4]

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.[5]  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[6]  Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[7]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[8]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[9]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[10]  A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief' beyond labels and conclusions."[11]  Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[12]  While the court assumes that all factual allegations in the complaint are true and draws

---

[4] *Id.*

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[7] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[8] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[9] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

[10] *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also Victaulic Co v. Teiman*, 499 F.3d 227, 234 (3d Cir. 2007).

[11] *Twombly*, 127 S. Ct. at 1965.

[12] *Id.* at 1974.

all reasonable factual inferences in the light most favorable to the plaintiff, it rejects unsupported allegations, "bald assertions," or "legal conclusions."[13]   "When a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[14]

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when reviewing a motion to dismiss.[15]   Rule 12(d) addresses the use of materials which are outside the pleadings in motions to dismiss under Rule 12(b)(6).   When such materials are presented, the motion is treated as one for summary judgment.   However, certain additional materials may be considered without converting the motion to dismiss into a motion for summary judgment.   Moreover, a court is "not limited to the four corners of the complaint" and cases have allowed "consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint whose authenticity is unquestioned . . . ."[16]   A plaintiff is entitled to notice and a fair opportunity to respond to any evidence the court might consider in its review of a motion to dismiss.   Where a plaintiff had such notice, however, it is proper for the court to consider that evidence.[17]

---

[13] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuykill Energy Res., Inc v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).

[14] *Twombly*, 127 S. Ct. at 1969.

[15] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 988 F.2d 1192, 1196 (3d Cir. 1993).

[16] 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2007).

[17] *Pension Benefit*, 998 F.2d at 1196-97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.") (internal citations omitted).

**Analysis**

    **Eleventh Amendment Immunity and the FMLA - DHSS, DPC, and Henry, Robinson and Thompson in their official capacities**

    The basis for subject matter jurisdiction for the present matter in federal court is a possible violation of the FMLA by her employer, which are state agencies, DHSS/DPC.  Therefore, the court must first determine whether it has jurisdiction to enforce an FMLA claim against the state defendants and the individual defendants, when sued in their official capacities.  If the court lacks such subject matter jurisdiction, it cannot exercise supplemental jurisdiction over the remaining state law counts, that is, the whistleblower and civil conspiracy claims.[18]

    All defendants argue that they are immune from suit under the Eleventh Amendment which states that:  "the Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Supreme Court has consistently interpreted that, under that language, a state is immune from suit from its own citizens in federal court.[19]  It is uncontested that the DHSS and the DPC are state agencies, and as arms of the state, fall under the protection of the Eleventh Amendment.

    The analysis, however, is not so simple.  Though Congress may not abrogate a state's immunity through its Article I powers, it is able to do so through a valid exercise

---

[18] 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.").

    [19] *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000).

of its § 5 powers within the Fourteenth Amendment.[20]  Congress may abrogate a state's

immunity in federal court, as long as, such intention is clear under the statute and a

valid constitutional exercise under § 5 of the Fourteenth amendment.[21]  As the Court

determined in regards to FMLA:

> The clarity of Congress' intent here is not fairly debatable.  The Act
> enables employees to seek damages "against any employer (including a
> public agency) in any federal or State court of competent jurisdiction," and
> Congress has defined "public agency" to include both "the government of
> a State or political subdivision thereof" and "any agency of. . . a State, or a
> political subdivision of a state."[22]

Therefore, according to Harrison, Congress clearly meant to abrogate states' immunity

in relation to the FMLA.  Harrison maintains that her argument is simply a continuation

of what has been established:  Congress meant to revoke a state's immunity in FMLA

cases; therefore, federal courts have jurisdiction.  However, Harrison's argument is

misplaced.

For legislation to be a valid constitutional exercise under § 5, it must exhibit

"congruence and proportionality between the injury to be prevented or remedied and

the means adopted to that end."[23]  The aim of the FMLA was to protect the right to be

free from gender and sex-based discrimination in the work place.[24]  Before the FMLA,

women combated the stereotype that they would be less efficient than men in the

workplace because of their potential need to take time off to care for children and

family.  Congress identified the motivation of the FMLA to be:

---

[20] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 446 (1976).
[21] *Nevada Dep't of Human Resources v. Hibbs*, 123 S.Ct. 1972 (2003).
[22] *Id.* at 1976-77.
[23] *Id.* at 1978.
[24] *Id.* ("The text of the Act makes this clear.")

> Historically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are mothers first, and workers second.  This prevailing ideology about women's roles has in turn justified discrimination against women when they are mothers or mothers-to-be.[25]

The FMLA combated such stereotyping by giving both genders the same amount of leave time to address family care.

The FMLA has been judicially divided between the sections that are validly classified as family-care, under 29 U.S.C. § 2612 (a)(1)(A),(B),(C), and self-care, under 29 U.S.C. § 2612 (a)(1)(D).[26]  The Supreme Court held that the family-care provisions of the FMLA are "congruent and proportional" remedies to the issue of sex-based discrimination.[27]  Thus, a state's sovereign immunity may be abrogated for enforcement of the family-care provisions.[28]

However, the self-care provision does not further the Congressional goal of protecting against discrimination:  thus, states' sovereign immunity remains.  The issue of FMLA immunity was addressed by the Third Circuit in *Chittister v. Dep't of Cmty. and Econ. Dev.*[29]  The specific section of 29 U.S.C. § 2612 was not identified, but *Chittister* established that Congress had not abrogated states' Eleventh Amendment rights with respect to sections A through D.[30]  In the court's view, the FMLA was not a "congruent

---

[25] *Id.* at 1982. (quoting Congressional Joint Hearing 100).

[26] *See Savage v. State of New Jersey*, No. 05-2047,  2007 WL 642916 (D.N.J. Feb. 23, 2007); *Walker v. Dept. of Military and Veterans Affairs*, No. 2:08cv267, 2008 WL 2433091 (W.D. Pa. June 12, 2008); 29 U.S.C. § 2612 (a)(1).

[27] *Hibbs*, 123 S.Ct. at 1975 ("The impact of the discrimination targeted by the FMLA, which is based on mutually reinforcing stereotypes that only women are responsible for family caregiving and that men lack domestic responsibilities, is significant.  Moreover, Congress' chosen remedy, the FMLA's family-care provision is 'congruent and proportional to the targeted violation.'" quoting *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001)).

[28] *Id.* at 1982.

[29] 226 F.3d 223 (3d Cir. 2000).

[30] *Id.* at 229.

and proportional" exercise to enforce the Fourteenth Amendment.[31]

The Supreme Court addressed the issue three years later in *Nevada Dep't of Human Resources v. Hibbs*.[32]  It found that sections A through C, the family-care provisions, could be enforced against states and that Congress's method was congruent and proportional.[33]  Even though *Hibbs* reversed *Chittister* in part, "[t]he explicit and narrow holding in *Hibbs*, has not overturned the holding in *Chittister* that the self-care provision cannot be enforced against the States in federal court.  *Chittister* remains the law of this circuit."[34]  This court agrees.[35]

Because Harrison's FMLA leave was to care for her own medical condition, it falls under the self-care provision of the FMLA.  States retain their sovereign immunity from suit under that provision of the FMLA, and as a result, Harrison cannot sue state agencies.  Therefore, this court lacks subject matter jurisdiction, and the Eleventh Amendment immunity applies.

Harrison argues that even if immunity exists, Delaware has waived that protection by reference to her FMLA rights in letters from the Delaware Secretary of State and Robinson.  Such notification of rights, though, does not equate to a waiver of a state's immunity.[36]  Waiver must be explicitly made through express language or

---

[31] *Id.*

[32] 123 S. Ct. 1972 (2003).

[33] *Id.* at 1982.

[34] *Savage*, 2007 WL 642916, at *5.

[35] Several other circuits have also determined that *Hibbs* does not preclude a finding that the self-care provision of the FMLA is unenforceable against the states in federal court.  *Miles v. Bellafontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007); *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 879-80 (7th Cir. 2006); *Touvell v. Ohio Dep't of Mental Retardation and Developmental Disabilities*, 422 F.3d 392, 405 (6th Cir. 2005); *Brookman v. Wyoming Dep't of Family Services*, 342 F.3d 1159, 1165 (10th Cir. 2003)

[36] *Chittister*, 226 F.3d at 227; *see also McKlinitc v. 36th Judicial Circuit Court*, 508 F.3d 875, 877 (8th Cir. 2007).

10

through overwhelming implication.[37]  As noted herein, Delaware's immunity from suit is not abrogated under the self-care provision and Harrison has provided no evidence that Delaware made any unequivocal waiver of its Eleventh Amendment protection. Furthermore, *Braden v. County of Washington* determined that a mere mention of a person's FMLA rights is not sufficient to waive a state's Eleventh Amendment immunity.[38]

Harrison's suit against the individual defendants Robinson, Thompson and Henry, in their official capacities, does not establish subject matter jurisdiction.  It is well established that an action against a person in their official capacity is equivalent to suing the state organization or state agency itself.[39]  As a result, an action against Robinson, Thompson and Henry in their official capacities suffers from the same infirmities as the action against the state agencies.

### Eleventh Amendment Immunity and the FLMA - Henry, Robinson and Thompson in their Individual capacities

However, Henry, Robinson and Thompson are also sued in their individual capacities.  Although the Third Circuit has not addressed the issue of individual liability of public officers under the FMLA, precedent in this circuit recognizes that public officers may be subject to suit in their individual capacities.[40]

---

[37] *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990).

[38] No. 08-CV-574, 2008 WL 5129919 (W.D. Pa. Dec. 5, 2008).

[39] *Yarnall v. Mendez*, 509 F. Supp. 2d 421, 429 (D. Del. 2007) ("The Eleventh Amendment bars suits against States and claims made against state officials in their official capacities are treated as claims made against the State itself.").

[40] *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 475 (W.D. Pa. 2008) (holding that the plain language of the FMLA renders individual supervisor subject to suit in his individual capacity); *see also Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403 (M.D. Pa. 1999).  The question of public officer liability is not settled and there is a split among the circuits that have addressed the issue.  *Compare*, *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003) (finding that the FMLA does not permit such actions) *with Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (finding "no reason to distinguish employers in the

The language of the FMLA only applies to employers.[41]  Under the FMLA, an employer equates to the public agency itself, as well as, "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."[42] As a result, the plain language of the statute evinces an intent for individual liability. Further, the FMLA tracks the statutory language of the Fair Labor Standards Act (FLSA) regarding the definition of an employer.  Both define an employer to include persons acting directly or indirectly in the interest of an employer in relation to an employee. The FLSA recognizes individual liability.  The FMLA regulations clarify that, "as under the FLSA (Fair Labor Standards Act), individuals such as corporate officers 'acting in the interest of the employer' are individually liable for any violations of the requirements of the FMLA."[43]  Therefore, the statutory language and the implementing regulations of the FMLA recognize that individual liability arises under the FMLA.

As noted previously, courts in this circuit allow public officers to be sued in their individual capacities under the FMLA.  In *Hayduk*, a defendant, who was the city manager for the City of Johnstown, was considered an employer and individually liable under FMLA because he had the sole power to hire and fire, was employed by the city to act in its interest, directly fired the plaintiff, and by his reasons for the termination purportedly was acting in the City's interest.[44]  In *Kilvitis*, the plaintiff sued the County of

---

public sector from those in the private sector"); *see also*, *Modica v. Taylor*, 465 F.3d 174,184-87 (5th Cir. 2006).
 [41] 29 U.S.C. § 2617(a)(1) ("Any employer who violates section 2615 of this title shall be liable to any eligible employee affected"); *Vaillies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir.  2006) ("It is well-settled that where unambiguous, the plain language of the statute or regulation controls.").
 [42] 29 U.S.C. § 2611(4)(A)(ii)(I).
 [43] 29 C.F.R. § 825.104(d).
 [44] *Hayduk*, 580 F. Supp. 2d at  476.

Luzerne and a county judge contending that termination of her employment violated her

rights under the FMLA.  The county judge authored and signed the termination letter.

After analyzing the case law from other jurisdictions on the issue of whether a public

employee could be individually liable under the FMLA, the court found that the judge

could be sued in his individual capacity under the FMLA, and denied the defendant's

motion for judgment on the pleadings.  The court further determined that, in light of the

termination letter, the plaintiff had presented sufficient facts to support her claim that

the judge was her employer.[45]

Based on the complaint with the exhibits attached thereto and in light of

Harrison's admission, only defendants Henry and Robinson could possibly meet the

definition of employer.  Nothing in the complaint suggests that Thompson exercised any

authority over Harrison.  Moreover, Harrison acknowledged in her responsive brief that

Thompson is not an "employer . . . as that term is used in either the FMLA or the

Delaware Whistleblowers' Act."

Harrison alleges that Henry, in her capacity as  Director of the Division of

Alcoholism, Drug Abuse and Mental Health of DHSS, supervised and authorized the

conduct of Robinson.  Henry apparently was involved in Harrison's 2005-2006

employee performance review as evidenced by her signature on that review.  She was

kept advised of the ongoing issues related to Harrison's FMLA matter as she was

copied on Robinson's letters of March 26, April 3, and May 4, 2007.  Those letters

advised Harrison that due to her conduct and unexcused and unauthorized absences,

---

[45] *Kilvitis*, 52 F. Supp. 2d at 411-16.

dismissal from work action would be taken.  The April 3 letter further advised that Harrison was not permitted to perform Director of Nursing duties because of her failure to comply with Robinson's instructions.  Henry is alleged to have participated in the April 12 pre-decision meeting.  That meeting allowed Harrison explain her conduct in relation to the FMLA matter before a final decision to terminate was made.

Robinson, as the Hospital Director of DHSS, had direct authority over Harrison. As evidenced from the exhibits attached to the complaint, she was directly involved in the FMLA issues, and regularly communicated with Harrison about them.  She was involved in determining whether Harrison should be terminated from her position.  As Hospital Director, she would have evaluated Harrison for her annual performance reviews.[46]  She participated in the professionals-union-hospital administrator meeting where it was recommended that Harrison be temporarily assigned and removed from her duties while investigation of complaints against her be completed.[47]  Further, as her letters suggest, Robinson's decision that Harrison's behavior was unacceptable rested in part on her alleged failure to follow Robinson's supervisory directions.  Further, it was Robinson who instructed Harrison not to perform any Director of Nursing duties until she complied with certain requirements.

Viewing the allegations most favorably to Harrison, Henry and Robinson could be considered employers under the FMLA.

Defendants urge that finding any of the individual defendants as an employer

---

[46] The 2006-2007 performance review would have occurred in July 2007.

[47] According to Exhibit D to the complaint, Robinson was to schedule a meeting in early 2007 to follow up on the concerns expressed during the professionals-union-hospital administrator meeting of December 14, 2006.

leads to an absurd result "where every other person in an organization can be an employer of others except the person on the very bottom."[48]  First, that argument is inapposite to the plain words of the statutory definition of employer which includes "*any person* who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."[49]  Second, this circuit's precedent favors liability of supervisors when they meet the statutory definition.[50]  Thus, Henry and Robinson, if determined to be Harrison's employers, could be liable in their individual capacities under FMLA.  At this stage, it is premature to dismiss the FMLA claims against them, and the extent of their control over the terms and conditions of Harrison's employment should be allowed to be explored.

Defendants argue that the individual claims cannot be maintained because such action is an attack against the State Treasury disallowed by *Edelman v. Jordan*.[51]  *Edelman* determined that the Eleventh Amendment barred retroactive payment of benefits against state officials sued in their official capacity.[52]  *Edelman*, however, did not address state officials sued in their individual capacity.  In the Third Circuit, suit against officials sued in their individual capacity for damages is allowed:  "[t]he eleventh amendment does not deprive the district court of jurisdiction to grant prospective equitable relief against appellee state officials, however, *nor does it prevent entry of an*

---

[48] *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 776-77 (M.D. N.C. 2000).
[49] 29 U.S.C. § 2611(4)(A)(ii)(I).  (emphasis added).
[50] *Hayduk*, 580 F. Supp. 2d at 477; *see also Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 412 (M.D. Pa. 1999).
[51] 415 U.S. 651, 664 (1974).
[52] *Id.* at 665.

*award for damages against the officials in their individual capacities.*"[53]  The "attack on the state treasury" argument is only applicable to claims against the state and state officials sued in their official capacity:  immunity does not flow to state officials sued in their individual capacity.  Since the only claims remaining are against Henry and Robinson in their individual capacities, *Edelman* is not controlling.  Harrison may maintain her action against them in their individual capacities.[54]

Therefore, defendants' motion under 12(b)(1) should be granted as to DHSS, DPC, Henry and Robinson (in their official capacities) and Thompson (in his official and individual capacity), and denied as to Henry and Robinson in their individual capacities.

**Whistleblower and Civil Conspiracy**

A federal court may exercise supplemental jurisdiction over other claims which occur within the same act or occurrence.  Supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Even though Harrison's whistleblower claim is based in state law, specifically, 19 Del. C. § 1701, and her civil conspiracy claim is based on common law tort, this court has subject matter jurisdiction over them because they are sufficiently related to the FMLA claim which provides original jurisdiction.  However, supplemental jurisdiction over

---

[53] *Helfich v. Com. of Pa., Dept. of Military Affairs*, 660 F.2d 88, 89 (3d Cir. 1981).  (emphasis added).

[54] *Cory v. White*, 457 U.S. 85, 90 (1982) ("*Edelman* was, in effect, a case against the state itself since it sought a judgment payable from the state funds.").

those state law claims is limited to Henry and Robinson only in their individual capacities.

As for the state defendants, including the individual defendants sued in their official capacities, Harrison does not provide a basis for jurisdiction, and the state law claims should also been dismissed.  The Eleventh Amendment may provide immunity in federal court from claims that a state violated its own law.[55]  Further, 28 U.S.C. § 1367(c)(3) allows a district court to "decline to exercise supplement jurisdiction over a claim . . . if . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  Consistent with the court's discretion, the state law claims against DHSS and DPC, as well as, Thompson, Robinson, and Henry in their official capacities should be dismissed.  Because the court has previously determined that Thompson cannot be liable under the FMLA since he is not an employer, there is no basis for supplemental jurisdiction against him in his individual capacity on the state law claims.[56]

**12(b)(6)**

As a result of the analysis herein, Robinson and Henry remain as defendants since they are sued in their individual capacities.  They have also moved, however, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The standard of review, as outlined above, requires that Harrison need only plead the bare minimum of facts to survive a motion to dismiss.  Under the liberal pleading standard of Fed. R. Civ. P. 8, only " a short plain statement of the claim showing that the pleader is

---

[55] *See, Bowers v. National Collegiate Athletic Ass'n.*, 475 F.3d 524, 550 (3d Cir. 2007) (determining that a state university is immune under the Eleventh Amendment from suit alleging violations of state tort law).

[56] Moreover, Harrison conceded that Thompson is not an employer under the Delaware Whistleblower's Protection Act.

entitled to relief," is required, the purpose of which is to place the opposition on notice of the conduct charged.  Harrison has met that minimal requirement.  For her FMLA claim, she has provided the necessary factual assertions to survive a 12(b)(6):  she took FMLA leave, was fired by Robinson and Henry for doing so, and her firing (the adverse decision) was causally related to her leave.[57]  Harrison includes specific dates for when she requested FMLA leave, when it was taken, the resulting difficulties and eventual termination.

The same result follows for her whistleblower claim under 19 *Del. C.* § 1703, where Harrison alleges the following facts:  she inquired about a potential act of patient abuse and she was fired after and as a result of reporting her concerns.[58]  Harrison provides the date for when the abuse took place, specifics about the abuse, who was involved in the alleged abuse and that she was fired after inquiring into the abuse.

Her civil conspiracy claim, though, is deficient.  As noted above, conclusory statements are not enough to survive a 12(b)(6) motion; thus, Harrison's bald allegation is insufficient.[59]  The mere averment that two people are involved in the managerial hierarchy is inadequate to purport a conspiracy.  Harrison has not alleged facts to suggest that there was a concerted effort to effectuate her termination.  She only contends that Robinson fired her and that any firing decision would have been reviewed

---

[57] *Tucker v. County of Monmouth*, 159 Fed. Appx. 405, 407 (3d Cir. 2005) ( holding that an FMLA claim requires plaintiff to show: (1) took FMLA leave, (2) suffered adverse employment decision, (3) the adverse decision was causally related to said leave).

[58] 19 *Del. C.* § 1703(4) " An employer shall not discharge . . . an employee . . .[b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation which the employee knows."

[59] *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 719 (D. Del. 2008) ("A civil conspiracy is defined in Delaware as the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage.").

by Henry.  Based on Harrison's complaint, any conspiracy is speculative.[60]  Therefore,

defendant's motion to dismiss under Rule 12(b)(6) should be granted on the conspiracy

claim and denied on the FMLA and Whistleblower claims.

**Harrison's leave to amend**

Although Harrison has not officially "moved" to amend her complaint, in a single

sentence in her opposition brief to avoid dismissal, she requests that leave to amend be

allowed to cure any deficiency.

As noted herein, Rule 8 governs the appropriateness of the averments of a

complaint.  Rule 15(a) controls amendments to the complaint, which provides that

"leave shall be freely given when justice so requires."  Although the determination of

whether to allow an amendment is within the discretion of the court, under *Foman v.*

*Davis*,[61] the Supreme Court has instructed that leave to amend should be freely granted

"in the absence of . . . undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party . . . futility of the amendment, etc."[62]  However, a court

may deny leave to amend a complaint when an amendment would be futile.[63]  At this

junction, the court has no idea what additional facts or information Harrison proposes to

add to her complaint to resolve the deficiency in her conspiracy claim.  Under the liberal

pleading rules, Harrison should be given the opportunity to amend.

---

[60] *See Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) ("To survive a motion to dismiss, a civil plaintiff must allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true.").

[61] 371 U.S. 178 (1962).

[62] *Foman*, 371 U.S. at 182.  *See also*, *Arthur v. Maersk, Inc.*, 434  F.3d 196, 203 (3d Cir. 2006).

[63] *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Defendants urge against allowing leave to amend on the basis that any amendment would be futile because the court lacks subject matter jurisdiction over all of the claims.  As evidenced above, that argument is without merit since the court has subject matter jurisdiction over Harrison's FMLA and whistleblower claims against Robinson and Henry in their individual capacities.  Allowing Harrison to cure the deficiencies in her conspiracy claim would not be futile.[64]

However, because of the application of Eleventh Amendment immunity to the state defendants and individual defendants sued in their official capacities and the concession as to Thompson in his individual capacity, Harrison's request for leave to amend as to those parties would be futile because the court lacks subject matter jurisdiction.[65]

## ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein,

1.  I recommend that defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) (D.I. 11) be granted as to DHSS, DPC, and Thompson in his official and individual capacities and Robinson, and Henry in their official capacities.

2.  I recommend that defendants' motion to dismiss for lack of subject matter jurisdiction be denied as to Robinson and Henry in their individual capacities.

3.  I recommend that defendants' motion to dismiss under Rule 12(b)(6) be

---

[64] Allowing Harrison to amend her complaint does not mean that the court has determined the sufficiency of the amendment.
[65] See, Miklavic v. USAir, Inc., 21 F.3d 551, 557-58 (3d Cir. 1994) (where amending complaint would be futile since the court lack jurisdiction over the subject matter).

granted without prejudice as to the conspiracy claim against Henry and Robinson in their individual capacities, with leave to allow Harrison to amend her state conspiracy claim.  Harrison shall file her proposed, redlined amended complaint on or before **March 10, 2009**.

I further recommend that defendants' motion to dismiss under Rule 12(b)(6) be granted as to the state defendants and Thompson and Henry and Robinson in their official capacities and denied as to Henry and Robinson in their individual capacities as to the FMLA and Delaware Whistleblower's Protection Act claims.

4.  A Rule 16 scheduling conference for plaintiff and defendants Henry and Robinson is scheduled under a separate order issued today.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov.


Dated:  February 24, 2009          /s/ Mary Pat Thynge_____
                                   UNITED STATES MAGISTRATE JUDGE